MYRA ANN PRUITT,                      )
                                      )
     Plaintiff,                     )
                                      )
v.                                    )
                                      )
HONDA OF AMERICA MANUFACTURING,       )   No. 3:06-0128
INC., DIAMOND LOGISTICS, INC.,        )   JUDGE ECHOLS
LINCOLN GENERAL INSURANCE             )
COMPANY, PENSKE TRUCK LEASING         )
COMPANY, L.P., a Delaware             )
Limited Partnership, ROBERT           )
PEYTON, and STACY G. LUNA,            )
                                      )
     Defendants.                    )

## MEMORANDUM

Pending before the Court is "Plaintiff's Objection to Defendant Honda of America Manufacturing Inc.'s Notice of Removal" (Docket Entry No. 4), to which Honda of America Manufacturing, Inc. ("Honda") responded. The Court construes Plaintiff's objection as a Motion to Remand this case to the Chancery Court of Rutherford County, Tennessee.

## I.  FACTS AND PROCEDURAL HISTORY

This declaratory judgment action arises from a tragic incident that occurred on August 10, 2005, in the Christiana community of Rutherford County, Tennessee. Sammy Lee Pruitt, Sr., was killed when a truck operated by Defendant Diamond Logistics, Inc. ("Diamond Logistics") and driven by Defendant Robert Peyton left the roadway, entered the front lot of the "C & E Market," and struck the gasoline pumps near where Mr. Pruitt was standing.

1

Defendant Luna, who is a Tennessee resident, was injured, and the C & E Market sustained extensive damage.

The personal injury and property damage claims are expected to exceed $1 million. Plaintiff Myra Ann Pruitt, as surviving spouse of Mr. Pruitt, filed a wrongful death action in this Court on August 26, 2005, <u>Pruitt v. Diamond Logistics, Inc. and Robert Peyton</u>, Civ. No. 3:05-0660 (M.D. Tenn.), which is pending.

At the time of the incident, Diamond Logistics was hauling freight for Honda pursuant to an "Agreement for Motor Carrier Transportation Services." The agreement defined Diamond Logistics as the "carrier" engaged in "the transportation of property for hire, by motor vehicle, under its authority as a regulated carrier and subject to the provisions of the Interstate Commerce Act and the relevant laws of the several states within which operations may be conducted[.]" (Docket Entry No. 1, Attached Petition for Declaratory Judgment, Ex. A at 1.)

Section 14 of the agreement between Honda and Diamond Logistics, entitled "Insurance," included the following requirement:

> A. <u>Types of Coverage</u>. Carrier [Diamond Logistics] will procure and keep in force continuously through the term of this Agreement the following types of insurance with insurers having an A.M. Best Rating of B+ XII or better:
>
> . . .
>
> > (iii) Automobile bodily injury and property damage insurance protecting against claims for bodily injury, including accidental death, as well as loss or damage to property in the

2

amount of $5,000,000 combined single limit per occurrence.

(Id., Ex. A at 6.)

Discovery in the Pruitt wrongful death case has revealed that the only policy of liability insurance in effect on the date of the incident which would provide coverage for the allegedly negligent acts of Defendants Peyton and/or Diamond Logistics is a policy of general liability insurance issued to Diamond Logistics through Defendant Lincoln General Insurance Company ("Lincoln General") providing $1 million in coverage for all claims.

To further complicate the matter, it appears that Diamond Logistics did not own the truck Peyton was driving at the time of the incident. In a separate contract between Honda and Diamond Logistics, entitled "Agreement for Loan of Property," Honda loaned to Diamond Logistics eight Wabash trailers for use in transporting Honda's auto parts and returnable containers between Honda and its supplier. (Id., Ex. A at 13-17.)

Diamond Logistics rented a tractor sleeper from Defendant Penske Truck Leasing of Louisville, Kentucky ("Penske") to pull the trailers. Paragraph 9 of the standard form rental agreement executed by Diamond Logistics and Penske provided that Diamond Logistics was responsible to carry automobile liability insurance coverage for its customer, Honda, as well as for Penske, insuring against bodily injury (including death) and property damage with a combined single limit of at least $1 million. The rental agreement further provided in paragraph 9 that "[a]ny liability insurance

3

obtained by [Penske] shall be excess insurance over all insurance obtained by [Diamond Logistics]." (Id.)

Defendant Lincoln General, Diamond Logistics' insurer, intended to file an interpleader action in the Chancery Court of Rutherford County. Lincoln General planned to tender its policy limits of $1 million and seek discharge from the proceedings.

On January 19, 2006, Plaintiff filed a Petition for Declaratory Judgment under the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29-14-101, et seq., in the Chancery Court of Rutherford County, Pruitt v. Honda of America Manufacturing, Inc. et al., Chancery Case No. 06-0097CV. Plaintiff requested the state court to adjudicate the rights and obligations of the parties with regard to certain documents attached to the Petition and federal statutes and a federal regulation requiring certain trucks engaged in interstate commerce to be covered by personal injury and property damage insurance in the amount of $5 million. The documents attached to the Petition included the "Agreement for Motor Carrier Transportation Services" between Honda and Diamond Logistics," the "Agreement for Loan of Property" and an "Agreement for Loan of Property Schedule" between Honda and Diamond Logistics, (Ex. A), and the "Vehicle Lease Service Agreement" between Penske and Diamond Logistics (Ex. B).

Plaintiff specifically sought declaratory judgment in relation to the contractual and statutory duty of Honda to ensure Diamond Logistic's compliance with the federal regulatory obligation to maintain a $5 million vehicle liability policy on its truck while

carrying out contractual duties in hauling freight for Honda. The Petition states:

> Specifically, it is alleged that the vehicle involved in the accident was a vehicle leased for use in interstate commerce, and therefore subject to the requirements of federal law, enacted for the protection of the public from inadequately effected insurance protection for negligent operation of trucks in interstate commerce, and specifically the regulatory requirements of 49 C.F.R. Section 1043 and the statutory requirements of 49 U.S.C.S. Section 303(a)(e) and related statutes and regulations promulgated through the Federal Motor Carrier Safety Administration, United States Department of Transportation, including 49 U.S.C.S. Section 13906, enacted and effected in 2005 which places responsibility on [Honda] to insure that the mandatory contractual obligation for $5,000,000.00 in liability insurance was properly effected.

(Docket Entry No. 1, Attached Petition at 3-4.) Plaintiff named as defendants Honda, Diamond Logistics, Lincoln General, Penske, Peyton and Luna.

On February 17, 2006, Honda removed the action to this Court pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1331 alleging federal question jurisdiction. Honda also filed a "Separate Answer and Cross-Claim to Plaintiff's Petition for Declaratory Judgment.

On March 1, 2006, Plaintiff filed her objection to Honda's Notice of Removal. Plaintiff denies that this Court has federal question jurisdiction to entertain the Petition for Declaratory Judgment, contending that the Petition "is not primarily based upon any federal statute or issue, but instead principally involves a matter of contract interpretation through a Tennessee statutory remedy for deciding the respective rights of the various claimants pursuant to the terms of the contract[s appended] to the petition."

5

(Docket Entry No. 4 at 2.)  Plaintiff admits that Paragraph 3 of the Petition alleges the truck involved was subject to the requirements of federal law and "references several regulatory requirements for the maintenance of interstate trucking insurance liability coverage.  However, the claim is not directly based upon those statutes or regulations, which are merely incidental to the construction of the contract[s]."  (Id. at 3.)

Honda resists remand to state court on the ground that this Court has jurisdiction because Plaintiff specifically cited and relied on federal statutes and a federal regulation in the Petition.

## II.  ANALYSIS

Honda's removal notice was based on 28 U.S.C. § 1441(b), which provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  Because the "arising under" language of § 1441(b) is almost identical to the language of 28 U.S.C. § 1331, the scope of removal jurisdiction based on the existence of a federal question under § 1441(b) is identical to the scope of federal question jurisdiction under § 1331. Eastman v. Marine Mechanical Corp., 438 F.3d 544, 549 (6th Cir. 2006).  Thus, the party seeking removal, in this case Honda, bears the burden to demonstrate that this Court would have original jurisdiction over Plaintiff's Petition for Declaratory Judgment.  See id.

6

Plaintiff's claim for declaratory relief in the construction of the subject contracts falls within this Court's original jurisdiction under § 1331 only if the well-pleaded Petition establishes that federal law creates the cause of action or the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. _Id._ at 550. The Court must construe the removal statute strictly and resolve all doubts in favor of remand. _See_ _id._ The Plaintiff is the master of her own claim and may decide upon which law she chooses to rely. _See_ _id._

Last year, "the Supreme Court reaffirmed its long-standing, albeit controversial, interpretation of 28 U.S.C. § 1331 'that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.'" _Id._ (citing _Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg._, — U.S. —, 125 S.Ct. 2363, 2367 (2005)). In _Grable & Sons_, the Supreme Court held "that the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal question jurisdiction" over a quiet title action concerning land that was purchased at a federal tax sale. 125 S.Ct. at 2365. The court reasoned that exercising federal jurisdiction over the suit "would not distort any division of labor between the state and federal courts, provided or assumed by Congress." _Id._

The division of labor between the state and federal courts is the focal point of the necessary analysis, "[f]or the federal issue will ultimately qualify for a federal forum only if federal

7

jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 2367. The Supreme Court explained:

> These considerations have kept us from stating a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. [citation omitted] We have not kept them out simply because they appeared in state raiment, . . . but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

Id. at 2368. See also Milan Express Co. v. Western Sur. Co., 886 F.2d 783 (6th Cir. 1989) (holding federal interest in regulation of interstate commerce permitted federal court to adjudicate claims for recovery under property broker surety bonds, which are creatures of federal law).

The Supreme Court offered assurance that the outcome in Grable & Sons was not at odds with the earlier pronouncement in Merrell Dow Pharm. v. Thompson, 478 U.S. 804 (1986), that federal jurisdiction was unavailable where a state tort claim rested in part on an allegation that the defendant drug company violated a federal misbranding regulation and was thus presumptively negligent under Ohio law. Grable & Sons, 125 S.Ct. at 2369. The Supreme Court harmonized Merrell Dow by noting:

> The Court assumed that federal law would have to be applied to resolve the claim, but after closely examining the strength of the federal interest at stake and the

8

> implications of opening the federal forum, held federal jurisdiction unavailable. Congress had not provided a private federal cause of action for violation of the federal branding requirement, and the Court found "it would . . . flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation . . . is said to be a . . . 'proximate cause' under state law."

Id. Thus, the Supreme Court counsels, "Merrell Dow should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." Id. at 2370. Expanding further:

> The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

Id.

Consequently, this Court must "examine the factors bearing on the substantiality of the federal question involved against the background of the federal-state division of responsibility for adjudicating disputes." Eastman, 438 F.3d at 550-551. As in Eastman, the Court concludes that this "is one of the causes that ought to be laid aside." Id. at 551.

Plaintiff's Petition for Declaratory Judgment asks the Court to construe and interpret contracts. Such an endeavor ordinarily

requires application of state law principles, and the responsibility to resolve state-law matters is primarily reserved to state courts absent any basis for this Court to assert its diversity jurisdiction. See e.g. Ralph v. Pipkin, 183 S.W.3d 362 (Tenn. Ct. App. 2005) (resolving case seeking declaratory judgment in insurance dispute). Plaintiff's Petition refers to federal law only to identify the source of the requirement that trucks operated in interstate commerce must be insured for various limits against liability for certain potential injuries or property losses. Specifically, Plaintiff cites 49 U.S.C. § 303(a)(e), 49 U.S.C. § 13906, and 49 C.F.R. § 1043.[1]

The pertinent federal statutes upon which Plaintiff relies do not create a private federal cause of action to enforce individual rights. See Millers Nat'l Ins. Co. v. Axel's Express, Inc., 851 F.2d 267, 269-270 (9th Cir. 1988) (construing earlier version of these statutes to hold that federal question jurisdiction was lacking in similar insurance dispute involving motor carrier regulated under federal law); Carway v. Progressive County Mut. Ins. Co., 183 B.R. 769, 773 (S.D. Tex. 1995) (holding that

---

[1]Although Defendant parrots these citations in its Notice of Removal and in its response to Plaintiff's objection to removal, two of the citations appear to be erroneous. The Court is unable to locate any statute with the citation "49 U.S.C. § 303(a)(e)." Title 49 U.S.C. § 303(a) and 49 U.S.C. § 303a exist, but those statutes are not relevant here. Moreover, "49 C.F.R. § 1043" does not exist.

As far as the Court can determine from its limited research, the liability insurance requirement for trucks hauling property in interstate commerce can be found in 49 U.S.C. §§ 13906 and 31139, and 49 C.F.R. § 387.303.

10

Interstate Commerce Act and regulations do not create federal cause of action or transform state-law claim such that substantial federal question arises under federal law). Congress' decision to withhold a private right of action in the statutes is an important signal about its view of the substantiality of the federal question involved, see Eastman, 438 F.3d at 551, and it is a clue this Court must consider. Grable & Sons, 125 S.Ct. at 2370. As the Supreme Court stated in Merrell Dow, 478 U.S. at 814, the congressional determination that there should not be a federal remedy for violation of a federal statute "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." This Court likewise concludes that the reference in Plaintiff's Petition "to the federal statutes cited as a source of public policy does not create a substantial federal question in this case." Eastman, 438 F.3d at 553.

The Court further concludes that accepting federal question jurisdiction of this contractual dispute in the context of declaratory judgment would disrupt the sound division of labor between state and federal courts envisioned by Congress. See id.; Grable & Sons, 125 S.Ct. at 2368. Recognizing a substantial federal question when a violation of federal law is identified as the source of a contractual duty would severely impact the number of cases that could be removed from state to federal court. If the federal standard for insuring trucks in interstate commerce,

Case 3:06-cv-00128    Document 6    Filed 03/28/06    Page 11 of 13 PageID #: 76

without a federal cause of action, could get a state declaratory judgment action based on contract into federal court, then any number of similar cases which look to federal court to set a standard or policy could also be brought in federal court. <u>Grable & Sons</u>, 125 S.Ct. at 2370; <u>Merrell Dow</u>, 478 U.S. at 814. This would upset the balance between state and federal courts and "would distort the division of judicial labor assumed by Congress under section 1331." <u>Eastman</u>, 438 F.3d at 553. <u>See also</u> <u>Kentucky *ex rel.* Gorman v. Comcast Cable of Paducah, Inc.</u>, 881 F. Supp. 285, 287-289 (W.D. Ky. 1995) (granting remand to state court for lack of a substantial federal question where suit under state consumer protection law referred to federal cable statute for prohibition standard).

Honda does not suggest that federal law preempts Plaintiff's declaratory judgment petition. <u>See</u> <u>Palkow v. CSX Transp., Inc.</u>, 431 F.3d 543, 552-554 (6th Cir. 2006); <u>Carway</u>, 183 B.R. at 773. In any event, the Court does not see how such an argument could be made.

Finally, while Plaintiff cites <u>Bituminous Cas. Corp. v. J & L Lumber Co.</u>, 373 F.3d 807 (6th Cir. 2004), as support for its request to remand, that case was originally brought in district court under diversity jurisdiction, and the Sixth Circuit reversed and remanded for dismissal on the ground that the district court should have declined to exercise its jurisdiction over the declaratory judgment action. That holding and reasoning is inapposite here, where the

12

question is whether removal was appropriate on the basis of federal question jurisdiction.

### III. <u>CONCLUSION</u>

Accordingly, for the reasons stated, the Court concludes that a substantial federal question is not raised by Plaintiff's Petition for Declaratory Judgment. The removal of the case to federal court was improvident. As a result, Plaintiff's Objection to the removal, which the Court construes as a Motion for Remand, will be GRANTED. This case will be remanded to the Chancery Court of Rutherford County, Tennessee.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE